IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAMONT O'SHEA DOUGLAS,
        Plaintiff,

v.                                                 Civil Action No. 3:22cv186

TONYA CHAPMAN,
        Defendant.

**MEMORANDUM OPINION**

Lamont O'Shea Douglas, a former Virginia inmate, now incarcerated in New Jersey, has submitted this 42 U.S.C. § 1983 complaint. (ECF No. 1.) Douglas contends that the Virginia Parole Board ("VPB") violated his rights by refusing to release him on discretionary parole. The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Douglas's claims and the action will be dismissed as frivolous and for failure to state a claim for relief.

**I. PRELIMINARY REVIEW**

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B); *see id.* § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory" or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a court must accept a plaintiff's well-pleaded allegations as true and view the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable," *id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while a court must liberally construe *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it should not act as the inmate's

2

advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint, see *Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. DOUGLAS'S ALLEGATIONS AND CLAIMS

Douglas, an inmate eligible for discretionary parole, brings this action against Tonya Chapman, the former Chairman of the VPB. In his complaint, Douglas contends that the VPB improperly denied him discretionary parole.

### *A. Ground One*

Under what Douglas labels "Ground One," he contends that the VPB denied him "due process";[1] the "equal application of the law";[2] and "fair treatment and dignity" during and after the parole interview process. (ECF No. 1, at 3.)

#### *1. Facts Asserted in the Complaint*[3]

Douglas asserts the following facts in support of Ground One.

#1. Plaintiff was given a parole hearing on or about [September or October of] 2020 at Trenton State Prison by way of [a] telephone call.
#2. Pursuant to 53.1 Code of Virginia, the Virginia Parole Board and policy manual at page 9–10 states, I am entitled to dignity and fair treatment an interview process. "A FACE-TO-FACE MEETING."
#3. Plaintiff states the parole board severely restrained my liberty interest in a proper hearing, (arbitrarily and capriciously) because it was convenient and easier with a telephone hearing; and determined character, demeanor, veracity, and trustworthiness without the face-to-face interview. Because it was convenient and easier.
#4. I was denied the dignity and fair treatment that accompanies the interview process. The interview is integral in the decision-making process on whether to

---

[1] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[2] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[3] The Court employs the pagination assigned to the CM/ECF docketing system. The correct corrects the capitalization and punctuation in the quotations from Douglas's Complaint

3

grant or deny parole. The interview is also designed to allow me to hand in further documents that I just received a week before the telephone hearing was held.

#5. All other similarly situated prisoners under § 53.1 Code of Virginia corrections authority receive their dignity and fair treatment with a face-to-face interview. I was not given this honor. Due to it being easier and more convenient to use a telephone hearing.

#6. A telephone call hearing is based on one sense . . . EARS, the face-to-face interview is based on all five senses and any other perceivable phenomena . . . to determine veracity, character, demeanor, [and] build confidence[ and ]trust[] by observing each response to gauge[ or ]measure its sincerity.

#7. During the telephone hearing the parole board examiner, Mr, Bryant, stated: "You **sound** like you're college educated." At which time I responded: "I self-educate and use my time to my advantage. He also expressed that I have done everything the board [has] asked me to do. In addition, he believed I had a very good chance at parole this year.

#8. Then on Dec. 23, 2020, I was given the decision not to grant parole. In addition, a three-year deferral.

#9. The board used vague and indefinite reasons that do not guide nor support the record. And left the Plaintiff to guess at its real reasons.

**"[Y]ou need to show a longer period of stable adjustment."**

Plaintiff states prison is a violent, hostile, and unnatural environment and a more stable adjustment to a prison life would destroy any reasonable person's change at being responsible, self-reliant, and able to function in a normal fashion once returned to society. This reason is also evidence [that] the board wants proof of sincerity, which I can never do. TRUST is GIVEN.

**"[Y]ou need further participation in institutional work and/or educational programs to indicate your positive progression towards re-entry into society."**

This statement does not specify what area I am lacking in, **and smacks of persecution**. I have a different IDEA/IDEAL of my contribution to society, which the board does not honor. Plaintiff states he has a General Equivalency Diploma and has been studying holistic healing and other spiritual phenomena as a means to promote my lifestyle and philanthropic goals once released. Furthermore, the institution does not offer more than G.E.D. educational opportunities . . . the phrase "to indicate your positive progression" toward re-entry into society leaves me to guess at its real meaning: THE PAROLE BOARD WANTS ME TO PROVE I AM SINCERE. There is no way to prove sincerity that is what the FACE-TO-FACE interview is for.

**"[R]elease at this time would diminish [the] seriousness of [your] crime[ and the] serious nature and circumstances of your offense."**

The crime will never be diminished. It has been the same for 200 years since the founding of the country. And, it will never change until society changes its CORE

> VALUES of exacting revenge on sinners.
> #10. Plaintiff states the board exceeded its discretion and gave Plaintiff a three-year deferral without the proper interview process required by policy and procedure (due process), [b]ecause it was easier and more convenient to do so.
> #11. Plaintiff states his liberty interest in being considered for parole for the next three years is severely restrained by the board's **politically motivated** deferral.
> #12. Plaintiff states on Jan. 28, 2021, I appealed the decision not to grant parole and addressed each reason, in turn. In my appeal, I addressed [that] no guidance was given and the board was not attuned to my rehabilitative needs, by making vague and indefinite statements not supported by the record, and smacks of persecution.
> #13. The parole board, Chairperson Tonya Chapman, responded on June 21, 2021, without addressing any of the procedural violations, in effect leaving the battlefield.

(*Id.* at 3–6 (cleaned up) (all emphasis in original) (some paragraph structure omitted).)

### B. Ground Two

Under what Douglas labels "Second Ground," he contends that Chapman and the VPB were "[b]ias[ed] decision maker[s]." (*Id.* at 6–7.) In support, he attaches a news article which he claims is "evidence of the politicize[d] nature of the parole boards recent denial of [his] parole with a three-year deferral." (*Id.* at 7.)

### 1. *Facts Asserted in the Complaint*

Douglas asserts the following facts in support of Ground Two.

> #14. Plaintiff states the parole board made a political pressure decision to deny parole to the Plaintiff with a three-year deferral, due to the polarization of parole between ANTI-PAROLE state officials . . . and PRO-PAROLE state officials . . . .
> #15. The Office of the State Inspector General investigation and report/allegations concluded that the board violated its own policies and procedures for decades.
> #16. This investigation report was issued at the height of Plaintiff's parole decision-making process.
> #17. This same board did not follow its own procedures in Plaintiff's case. (Ground One).
> #18. Plaintiff states, with conviction, he suffered backlash of this political scuffle between ANTI-PAROLE and PRO-PAROLE state officials.
> #19. Governor Ralph Northam felt it necessary to stress parole should not be politicize[d] in an attempt to calm both sides down. Yet, the parole chair, PRO-PAROLE state official, Adrienne Bennet, was made to resign.
> #20. Plaintiff states, with conviction, the denial and three-year deferral was based on the political climate, **NOT ON THE MERITS OF MY CASE.**
> #21. Plaintiff states the new board[,] and Tonya Chapman, is not of average

5

> firmness required to stand behind their decision in the fact of criticism and political pressure. TO WIT: When Plaintiff appealed the denial of parole based on the violation of policy and procedure, Tonya Chapman denied [that] policy and procedure was violate[d] and upheld the process that the Inspector General report accuse[d] the old board of doing.
> #22. The protections that are require[d] to protect me against ill-considered denials and deferrals were not afforded to me.

(*Id.* at 7–8 (cleaned up) (all emphasis in original) (some paragraph structure omitted).) Douglas asks for injunctive and declaratory relief and monetary damages. (*Id.* at 8.) The Court construes Douglas to raise the following grounds for relief:

Claim One:   The VPB violated his (a) due process rights and (b) equal protection rights when they denied him parole.

Claim Two:   The VPB violated state policy and procedures when they denied him parole.

### III. ANALYSIS

#### *A. Claim One (a) - Due Process*

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Where government action impacts a protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (observing that "due process is flexible . . . . not all situations calling for procedural safeguards call for the same kind of procedure").

A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "With no

6

constitutional right to parole per se, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (quoting *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991)).

"Contrary to [Douglas's] view . . . , 'the pertinent [Virginia] statutes, far from creating a presumption that release will be granted [if he meets certain criteria], absolutely prohibits parole unless the Parole Board decides otherwise.'" *Burnette v. Fahey*, No. 3:10cv70, 2010 WL 4279403, at *8 (E.D. Va. Oct. 25, 2010) (second alteration in original) (quoting *James v. Robinson*, 863 F. Supp. 275, 277 (E.D. Va.), *aff'd*, No. 94–7136, 1994 WL 709646 (4th Cir. Dec. 22, 1994)). The United States Court of Appeals for the Fourth Circuit has consistently found that the pertinent Virginia statutes governing release on discretionary parole fail to create a protected liberty interest in *release* on parole. *See Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012) (citing *Gaston*, 946 F.2d at 344; *Vann*, 73 F.3d at 522). Virginia, however, has created a limited liberty interest in consideration for parole. *Burnette*, 2010 WL 4279403, at *8; *Burnette*, 687 F.3d at 181. "The question thus becomes what procedures are required under the Due Process Clause in [considering] an inmate for discretionary release on parole." *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (quoting *Neal v. Fahey*, No. 3:07cv374, 2008 WL 728892, at *2 (E.D. Va. Mar. 18, 2008).

The Fourth Circuit has stated that the Constitution requires only a very limited amount of process in considering an inmate for parole. Specifically, "[a]t most, . . . parole authorities must furnish to the prisoner a statement of its reasons for denial of parole." *Burnette*, 687 F.3d at 181 (alteration and omission in original) (citation omitted) (internal quotation marks omitted). "So long as the statement provides a valid ground for denying parole, the federal courts cannot, under the guise of due process, demand more from the state." *Burnette*, 2010 WL 4279403, at *8 (citation omitted).

Here, according to Douglas, the VPB provided Douglas with a statement of its reasons for denying him parole. Specifically, Douglas contends that the VPB declined to release him on parole because he "need[ed] to show a longer period of stable adjustment;" he "need[ed] further participation in institutional work and/or educational programs to indicate [his] positive progression towards re-entry into society;" and "release at this time would diminish [the] seriousness of [his] crime[ and the] serious nature and circumstances of [his] offense." (ECF No. 1, at 5–6.) The Fourth Circuit has "concluded that that the parole board gave constitutionally sufficient reasons when it informed the prisoner that he was denied parole release because of 'the seriousness of [his] crime' and his 'pattern of criminal conduct.'" *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (quoting *Bloodgood v. Garraghty*, 783 F.2d 470, 472, 474–75 (4th Cir. 1986)). Here, the VPB provided Douglas with at least three valid grounds for its decision. *See Bloodgood*, 783 F.2d at 475 (explaining that the "denial rested on two valid reasons, and we see no reason to disturb the administrative judgments"). Douglas was not entitled to an in-person interview or to have his fitness for release on parole assessed on alternative grounds that he believes more appropriate. Rather, Douglas received all the process that the Constitution requires. Accordingly, Claim One (a) will be DISMISSED as legally frivolous and for failure to state a claim for relief.[4]

### B. Claim One(b) - Equal Protection

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim,

---

[4] To the extent that Douglas argues that the decision maker was biased or that somehow the VPB exceeded its discretion by giving him a three-year deferral of parole, (ECF No. 1, at 6–7), he fails to state a claim for relief. Douglas received a statement providing valid reasons for the denial of parole and therefore he received all the process he was due.

Douglas must allege that: (1) that he and a comparator inmate were treated differently and were similarly situated; and (2) that the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). Douglas fails to satisfy this threshold requirement for an equal protection claim. At most, Douglas suggests that while "[a]ll other similarly situated prisoners under § 53.1 Code of Virginia corrections authority receive their dignity and fair treatment with a face-to-face interview," he did not, "[d]ue to it being easier and more convenient to use a telephone hearing" in his case. (ECF No. 1, at 4.) Despite using the requisite language for an equal protection claim, Douglas fails to identify a similar situated inmate. Douglas is a former Virginia inmate who is currently serving his sentence in New Jersey. Douglas fails to identify a similarly situated individual who received an in-person interview. Thus, he fails to satisfy the initial prong of the test. Moreover, from Douglas's own allegations, it is evident that any differential treatment was due to convenience because he was housed out-of-state and not due to discrimination. Douglas fails to allege an equal protection claim. Accordingly, Claim One (b) will be DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

### C. Claim Two - Violation of State Policy

In Claim Two, Douglas suggests that the VPB violated its own policy and procedure in denying him parole, and the decision was made by biased decision makers. To the extent that Douglas contends that the VPB has failed to abide by Virginia law, he fails to state a federal constitutional claim. *See Burnette*, 2010 WL 4279403, at *9–10 (quoting *Hill v. Jackson*, 64 F.3d 163, 171 (4th Cir. 1995)). Any claim by Douglas that the VPB violated state policy or procedure will be DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

### IV. CONCLUSION

Claim One (a) will be DISMISSED. Claim One (b) and Claim Two will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED. The Clerk will be DIRECTED to

9

note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

    An appropriate Order shall issue.

Date: 26 July 2022
Richmond, Virginia

/s/